UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ABRAHAM DIONICIO MUÑOZ,<br><br>       Plaintiff,<br><br>  v.<br><br>CONNIE GIPSON, et al.,<br><br>       Defendants. | Case No.  21-cv-07176-AMO (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 24, 25 |

Before the Court is the motion for summary judgment under Federal Rule of Civil Procedure 56 filed by Defendants Kern Valley State Prison ("KVSP") Correctional Counselor II A. Geary, KVSP Correctional Counselor I T. Yonder, KVSP Captain C. Gutierrez, KVSP Associate Warden S. Swaim, Pelican Bay State Prison ("PBSP") Licensed Vocational Nurses ("LVNs") J. Walker-Baker, C. Van Horn, S. Whiteman, and G. Diehl, and PBSP Correctional Officers M. Runge, K. Trimm, T. Dimmick, and R. Little on the grounds that: (1) Plaintiff Abraham Dionicio Muñoz failed to properly exhaust available administrative remedies as to the Eighth Amendment claim against the KVSP Defendants before filing suit, as required by the Prison Litigation Reform Act ("PLRA")[1]; (2) there is no genuine dispute of material facts to support Muñoz's Eighth Amendment claims for deliberate indifference to his health and safety; and (3) they are entitled to qualified immunity.  Dkt. 24.[2]

---

[1] The Court notes that the Defendants do not dispute that Muñoz exhausted administrative remedies for his claims against the PBSP Defendants (Dimmick, Whiteman, Van Horn, Diehl, Runge, Little, Walker-Baker and Trimm), alleging they were deliberately indifferent to his health and safety for exposing him to COVID-19.  Dkt. 24 at 3 fn. 2.

[2] This action was initially assigned to the Honorable Jon S. Tigar before it was reassigned to the undersigned judge.  Dkt. 27.

I.      **FACTUAL BACKGROUND**

      A.      **Muñoz's Eighth Amendment Claims**

On September 16, 2021, Muñoz, a former prisoner who has since been discharged from parole, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging Eighth Amendment claims stemming from his previous incarcerations at KVSP and PBSP.  Dkt. 1.  Muñoz sues all of the named defendants in their individual and official capacities.  *Id.* at 6.  He seeks the following: $250,000.00 in compensatory damages and $50,000.00 in punitive damages from each defendant; declaratory judgment that his federal constitutional rights have been violated; and costs.  *Id.* at 17.[3]

         1.      **Muñoz's Version**

The Court summarizes Muñoz's allegations in his complaint by taking the following from Judge Tigar's May 12, 2022 service order:

> Sometime in 2020, while housed at KVSP, Plaintiff submitted a grievance requesting release pursuant to California Governor Newsom's emergency order requiring defendants Diaz and Kelso to release inmates who ar[e] non-violent and fit certain criteria for release under Cal. Gov't Code § 8658.  In response, on June 18, 2020, a KVSP classification committee composed of defendants Geary, Yonder, Gutierrez, and Swain approved Plaintiff's transfer to PBSP.  On September 16, 2020, Plaintiff was transferred to PBSP.

> During the relevant time period, orders issued in *Plata v. Newsom* required prison officials to put all prison transfers on hold; require all staff to wear personal protective equipment; implement social distancing of six feet apart; have all COVID-positive personnel stay home; and prevent unsanitary conditions that increased the risk of contracting of COVID-19.

> On October 28, 2020, Plaintiff was housed in the administrative segregation unit ("ASU") pending a transfer to the general population yard at either PBSP or another institution.  The front portion of the cells in [*sic*] are honeycomb perforated metal that permit officers to view the cell interior.  Plaintiff was not given any cleaning supplies to sanitize his cell.

> During the relevant time period, defendants Little and Andruid would conduct security walks of the ASU without wearing any personal protective equipment, such as face masks, gowns or gloves.  Defendants Little and Andruid further exposed Plaintiff to COVID by refusing to permit the unit to be sanitized in accordance with *Plata* guidelines.

---

[3] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

United States District Court
Northern District of California

During the relevant time period, Plaintiff was enrolled in the Medical Assistance Treatment Program, through which he receives narcotic medication daily in the following manner. He is given narcotic medication which he must place on his tongue. He must leave his mouth open for approximately two minutes so that prison staff, standing a foot or two away, can watch to see if the medication has dissolved. The nurses administering the medication during the relevant time period were defendants Whiteman, Afadho, Diehl, Vaught, Walker-Baker, and Van Horn, and the correctional officers supervising the medication distribution or escorting the nurses were defendants Sanchez, Runge, and Colson. Neither the nurses nor the correctional officers supervising the medication distribution wore PPE[4] medical equipment, i.e., masks, during the medication distribution.

Between November 10-15, 2020, Plaintiff lost his sense of taste and smell. Plaintiff informed a[n] LVN of this loss of taste and smell. On or about November 23, 2020, Plaintiff was informed that he had tested positive for COVID-19 and was quarantined. None of the four other inmates that lived in Plaintiff's pod tested positive for COVID-19. Plaintiff suffered the following COVID 19 symptoms: headaches, chills sweats, loss of smell and taste, nausea, sore throat, fatigue, dry cough, loss of appetite, shortness of breath, dizziness, vomiting, runny nose, muscle pain, insomnia, diarrhea, and weight loss. Plaintiff was at risk from dying from COVID-19 because he is 51 years old and because he has hepatitis C type (A-B), achalasia, and mental health issues due to depression. From November 30, 2020, to February 24, 2021, Plaintiff made multiple requests to be seen by a doctor to treat these symptoms, but his requests were ignored by defendant LVN Nassar. In response to his requests, defendant Nassar sent defendants correctional officers Lofton, Dimmick, Trimm and Runge to escort Plaintiff to her office. Defendants Lofton, Dimmick, Trimm and Runge failed to sanitize the waist[]chains or wear their PPE protective gear when escorting Plaintiff. Defendant Nassar told Plaintiff that he did not need to see a doctor for his COVID symptoms, stating she had COVID, as did defendants Lofton, Dimmick, Trimm and Runge, and that none of them required medical attention. Defendant Nassar also stated that it was unnecessary for her to wear a mask because she had COVID.

Plaintiff later learned that defendants Vaught, Afadho, Walker-Baker, Van Horn, Whiteman, Diehl, Colson, Runge, Lofton, Trimm, Dimmick, Sanchez, Little, and Andruid all tested positive for COVID-19.

Plaintiff alleges that he was illegally exposed to COVID-19 when defendants Yonder, Geary, Gutierrez, and Swaim transferred him from KVSP to PBSP despite a COVID outbreak at PBSP and a prohibition on prison transfers per *Plata*; and when defendants Little, Andruid, Whiteman, Afadho, Diehl, Vaught, Walker-Baker, Van Horn, Sanchez, Runge, Colson, Lofton, Dimmick, and Trimm failed to wear their PPE protection and maintain social distancing, and came to work while COVID-positive in violation of the [California

---

[4] PPE stands for personal protective equipment.

3

> Department of Corrections and Rehabilitations' ("CDCR's")] own guidelines. Plaintiff further alleges that defendant Nassar violated his Eighth Amendment right to be free from deliberate indifference to his serious medical needs when she refused to refer him to a doctor for his COVID-19 symptoms.

Dkt. 10 at 2-4 (footnote added).

Muñoz does not recall having any encounters with Defendant Diehl, and Muñoz does not know what Diehl looks like. Muñoz's Dep. at 61. Muñoz's only encounters with Defendant Dimmick happened after Muñoz had been quarantined with COVID-19. Dkt. 1 at 8-9.

### 2. Defendants' Version

#### a. The KVSP Defendants (Gutierrez, Swaim, Geary, and Yoder)

A KVSP classification committee referred Muñoz to transfer from KVSP to another institution on June 18, 2020. Dkt. 1 at 6; Swaim Decl. ¶ 2, Ex.. A. Defendants Gutierrez, Swaim and Geary were members of the classification committee. Swaim Decl. ¶ 2, Ex. A. Defendant Yoder was not. *Id.*

The June 18, 2020 classification committee hearing only referred Muñoz for transfer to another institution because of safety concerns expressed by Muñoz that he would be attacked by other inmates at KVSP, and did not actually transfer Muñoz at that time. Swaim Decl. ¶¶ 2-3, Ex. A. The classification committee hearing did not address factors and details pertaining to the physical transport of Muñoz from one institution to another, such as conditions arising from the COVID-19 pandemic. Swaim Decl. ¶ 3. These factors were addressed by others, after the committee had referred Muñoz to be transferred, and after prison staff determined to which prison Muñoz would be transferred. *Id.* At the time of the hearing, Defendant Swaim assumed that appropriate steps would be taken to ensure that Muñoz would be safely transferred. *Id.*

On September 16, 2020, prison staff transferred Muñoz from KVSP to PBSP. Dkt. 1 at 6-7. Muñoz contracted COVID-19 on or about November 20, 2020. *Id.* at 8.

#### b. The PBSP Defendants (Dimmick, Whiteman, Van Horn, Diehl, Runge, Little, Walker-Baker, and Trimm)

Within the C Facility at PBSP, where Muñoz was housed from October 28 to November 23, 2020, there were six housing units. Diehl, Whiteman, Walker-Baker, Van Horn and Trimm

4

Decls. ¶ 2.  There were approximately twenty-four inmates in each unit, with each unit containing six pods, and the inmates were housed in cells within the pods.  *Id.*  For the medication distributions, the units were accessed by way of a "roundabout" that went from the entry/exit gate inside the building, through each unit, and circling back to the starting location at the building entry/exit gate.  *Id.*  When and as required by PBSP protocols and procedures, PPE for staff involved in the medication distributions was kept in the first unit, donned for the medication distribution trip through each unit via the roundabout, and removed at the same location when the route had been completed, before staff exited the building.  *Id.*  The PPE required had been pre-placed for staff to use, including some or all of a mask or face shield, gloves, and smock/gown. *Id.*  Signs were posted at the location, indicating what equipment was to be used by staff.  *Id.* Defendants Diehl, Whiteman, Walker-Baker, and Van Horn claim that at all times they used the equipment that was so provided, in accordance with the signage.  *Id.*  Though they were not involved in distributing medication to Muñoz, Defendant Trimm (who escorted inmates and medical staff who were distributing medication), as well as Defendants Little and Dimmick also complied with the institution's requirements for wearing PPE at all times.  Trimm Decl. ¶ 2; Little Decl. ¶ 3; Dimmick Decl. ¶ 3.

      To receive their medication, inmates would exit their cells and come to the door of the pod. Diehl, Whiteman, Walker-Baker, Van Horn and Trimm Decls. ¶ 3.  The pods had a door that was "honeycomb" type perforated metal, which allowed for visual access, and a tray slot.  *Id.*  The directed procedure for the medication distribution was that the inmate would stand on one side of the pod door, and staff distributing the medication would stand on the other side of the door.  *Id.* The medication would then be passed to the inmate through the tray slot in the door.  *Id.*  Certain medications required staff to visually observe and confirm that an inmate had consumed it after the inmate had placed it in his mouth.  *Id.*  To do so, the PBSP protocol and procedure was for the staff member to stand approximately one and a half arm-lengths away from the inmate, and observe the inmate's mouth as open and empty through the perforated door.  *Id.*  Defendants Diehl, Whiteman, Walker-Baker, Van Horn and Trimm claim that they complied with these procedures at all times.  *Id.*

United States District Court
Northern District of California

1    From October 28 through November 23, 2020, the PBSP Defendants were required to test

2   for COVID-19 weekly and biweekly.  Diehl, Van Horn, Whiteman, Trimm and Walker-Baker

3   Decls. ¶ 5; Dimmick Decl. ¶ 2; Little Decl. ¶¶ 1-2.  Staff who tested positive were not permitted to

4   work, until later testing negative.  *Id.*  During this time, Defendants Diehl, Dimmick, Van Horn,

5   Walker-Baker, Trimm and Little tested negative.  *Id.*  Defendant Runge tested positive on October

6   29, 2020, and because of that he did not work from then until November 12, 2020, at which time

7   he tested negative.  Runge Decl. ¶ 3.  Defendant Whiteman tested positive on November 19, 2020,

8   and did not work from that date through November 28, 2020.  Whiteman Decl. ¶ 5.

9    Defendant Runge claims that he did not work in C-Facility while Muñoz was housed there.

10   Runge Decl. ¶ 2; Muñoz's Dep. (Mathison Decl. Ex. B) at 63.  Defendant Runge did not enter the

11   facility during that time, and thus he had no physical encounters with Muñoz.  *Id.*

12    Defendant Diehl does not recall encountering Muñoz.  Diehl Decl. ¶ 5.Defendant Dimmick

13   does not recall encountering Muñoz.  Dimmick Decl. ¶ 4.

14             **c.    Defendants' Request for Judicial Notice**

15    Defendants have filed a request for the Court to take judicial notice of the following three

16   exhibits:

17         (1) Governor Newsom's Executive Order of March 4, 2020,
            declaring a State of Emergency due to COVID-19, a copy of
18          which is published on the Office of Governor Gavin Newsom
            website at https://www.gov.ca.gov/2020/03/04/governor-
19          newsom-declares-state-of-emergency-to-help-state-prepare-for-
            broader-spread-of-covid-19/;

20         (2) Centers for Disease Control and Prevention, COVID-19 Science
            Update, published at
21          https://www.cdc.gov/library/covid19/scienceupdates.html?Sort=
            Date%3A%3Adesc (Nov. 12, 2021); and

22

23         (3) U.C. Davis Health, COVID-19 Information continues to evolve:
            what's new and what has changed, published at
24          https://health.ucdavis.edu/health-news/newsroom/covid-19-
            information-continues-to-evolve-whats-new-and-what-has-
25          changed/2020/08 (Aug. 26, 2020).

26   Dkt. 25 at 1-2.  This request is **GRANTED** because these documents are not subject to reasonable

27   dispute and are relevant to the claims in the case.  *See City of Sausalito v. O'Neill*, 386 F.3d 1186,

28   1223 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to

1   reasonable dispute.").  Exhibits 1-3 are all generally known within this Court's territorial

2   jurisdiction, and they reflect information that is "capable of accurate and ready determination by

3   resort to sources whose accuracy cannot reasonably be questioned."  *Jespersen v. Harrah's*

4   *Operating Co., Inc.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc) (citing Fed. R. Evid. 201).

5           **B.**      **Muñoz's Efforts to Exhaust His Administrative Remedies**

6           Muñoz submitted eight administrative health care grievances from the time he was

7   approved by the KVSP Defendants to be transferred to another prison on June 18, 2020, and the

8   time he filed the present lawsuit on September 16, 2021.  Gates Decl. ¶ 9, Ex. A.  In three of these

9   grievances, Muñoz requested an early release from prison because of the COVID-19 pandemic.

10   *Id.* at ¶ 10 (a)-(c), Exs. B-D.  In the fourth grievance, Muñoz complained that he was exposed to

11   COVID-19 by PBSP medical and custody staff.[5]  *Id.* at ¶ 10(d), Ex. E.  According to Chief of the

12   Health Care Correspondence and Appeals Branch ("HCCAB") S. Gates, "there is no record of

13   [Muñoz] submitting any grievance regarding a claim that he was transferred from [KVSP] to

14   another institution when it was improper or unsafe to do so because of the COVID-19 pandemic,

15   or for any other reason."  *Id.* at ¶ 9.

16           Office of Appeals ("OOA") Associate Director Howard E. Moseley states that he did a

17   search for "all non-health care related appeals received by the OOA on or after June 1, 2020," and

18   he claims that the resulting Offender Appeals Report shows that Muñoz submitted multiple

19   grievances that were "screened in or screened out . . . ."  Moseley Decl. ¶ 7, Ex.. A.  Associate

20   Director Moseley further explains:

21               A search was also conducted of the OOA computer system for all non-
22               health care related appeals received by the OOA from Plaintiff
            between June 18, 2020, and September 16, 2021, which alleged that
23               Plaintiff was transferred from [KVSP] to another CDCR institution
            when it was improper or unsafe for Plaintiff to be transferred.  No
24               appeals were received by the OOA from Plaintiff during this time
            period containing such an allegation.

25   *Id.* at ¶ 8.

26

27   _____

28   [5] As mentioned above, Defendants do not dispute that Muñoz exhausted his administrative
remedies for his claims against the PBSP Defendants.  *See* Dkt. 24 at 3 fn. 2.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

## II.   PROCEDURAL BACKGROUND

On May 12, 2022, Judge Tigar screened the complaint, dismissed certain claims and defendants with leave to amend, found that the complaint stated cognizable Eighth Amendment claims of deliberate indifference to Muñoz's health and safety against the remaining defendants, and ordered service on the Defendants presently before the Court.  Dkt. 10 at 5-7.  The May 12 Order found that:

> [t]he complaint states cognizable Eighth Amendment claims against defendants Yonder, Geary, Gutierrez, Swaim, Andruid, Little, Whiteman, Afadho, Diehl, Vaught, Walker Baker, Van Horn, Sanchez, Runge, and Colson.   Specifically, the allegation that defendants Yonder, Geary, Gutierrez, and Swaim transferred Plaintiff from KVSP to PBSP when PBSP had an outbreak of infections and prison transfers had been stopped under *Plata* states a cognizable Eighth Amendment claim for deliberate indifference to inmate safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (Eighth Amendment requires that prison officials take reasonable measures to protect inmates from dangerous conditions at prison).  The allegations that, prior to Plaintiff contracting COVID in early November 2020, defendants Andruid and Little refused to allow Plaintiff to sanitize his cell; and defendants Andruid, Little, Whiteman, Afadho, Diehl, Vaught, Walker Baker, Van Horn, Sanchez, Runge, and Colson failed to wear masks or social distance when conducting security walks and when supervising the administration of Plaintiff's medication because it exposed Plaintiff to contracting COVID state cognizable Eighth Amendment claims for deliberate indifference to inmate safety.
>
> The complaint states a cognizable Eighth Amendment claim against defendants Lofton, Dimmick, Trimm, and Runge.  Although Plaintiff had already contracted COVID in early November 2020, the allegation that defendants Lofton, Dimmick, Trimm and Runge failed to wear masks and failed to sanitize the waist[]chains nonetheless states a cognizable Eighth Amendment claim for deliberate indifference to inmate safety and for deliberate indifference to Plaintiff's serious medical needs.

Dkt. 10 at 5.

Defendants Geary, Yonder, Gutierrez, Swaim, Walker-Baker, Van Horn, Whiteman, Diehl, Runge, Trimm, Dimmick, and Little ("Defendants") appeared in this action and waived service on July 6, 2022.[6]  Dkt. 13.

Defendants move for summary judgment under Federal Rule of Civil Procedure 56 on

---

[6] On June 15, 2022, the CDCR notified Judge Tigar that they could not identify the following defendants: PBSP Correctional Officers Andruid, Afadho, Vaught, Sanchez, Lofton, and Colson. Dkt. 12.  To date, these defendants remain unserved and have not joined the served defendants in their pending motion for summary judgment.

8

grounds that Muñoz failed to properly exhaust available administrative remedies before filing suit against the KVSP defendants, as required by the PLRA.  Dkt. 24.  Defendants also move for summary judgment on the grounds that there is no genuine dispute of material facts to support Muñoz's Eighth Amendment claims, and they are entitled to qualified immunity.  *See id.*  While Muñoz was given the opportunity to file an opposition, he did not do so.  As mentioned above, this action was then reassigned to the undersigned judge.  Dkt. 27.

For the reasons outlined below, the Court GRANTS Defendants' motion for summary judgment.  The Court also DISMISSES all official capacity claims, punitive damages claims, and claims against any remaining defendants against whom Muñoz has failed to amend his claims.

## III.   DISCUSSION

### A.      DISMISSAL OF CERTAIN CLAIMS

#### 1.      Official Capacity

Prior to considering the pending motion for summary judgment, the Court finds that Muñoz's claims for monetary damages against all named defendants in their official capacities are barred by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985) *abrogated on other grounds as noted in Lane v. Pena*, 518 U.S. 187, 198 (1996).  Unless a state has waived its Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued regardless of the relief sought.  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).  Eleventh Amendment immunity extends to suits against a state agency, *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (CDCR and California Board of Prison Terms entitled to Eleventh Amendment immunity), and to suits for damages against state officials sued in their official capacities, *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985).  California has not waived its Eleventh Amendment immunity with respect to claims brought under Section 1983 in federal court. *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999).  Therefore, because the CDCR is a state agency, its employees, including the Defendants, sued in their official capacities are immune

1    from suit for monetary damages.

2         Accordingly, Muñoz's claims for monetary damages against all Defendants in their official

3    capacities are **DISMISSED** as barred by the Eleventh Amendment.[7]  Because it is clear that this

4    jurisdictional bar cannot be cured by further amendment to the complaint, such a dismissal is

5    without leave to amend.

6              **2.        Failure to Amend**

7         On May 12, 2022, Judge Tigar dismissed certain Eighth Amendment claims with leave to

8    amend to provide Muñoz one final opportunity to cure the deficiencies indicated in the May 12,

9    2022 Order within "**twenty-eight (28) days**" against PBSP LVN Nassar, KVSP Warden Pfeiffer,

10   PBSP Warden Jim Robertson, PBSP Healthcare CEO Woods, and the following CDCR officials:

11   Director Connie Gipson; Secretary Ralph Diaz; and Healthcare Receiver Clark Kelso.  Dkt. 10 at

12   9.  Specifically, the Court  dismissed with leave to amend Muñoz's Eighth Amendment claims

13   against Defendant Nassar for refusing to refer Muñoz to a doctor for his COVID-19 symptoms,

14   and against Defendants Pfeiffer, Robertson, Woods, Gipson, Diaz, and Kelso based on

15   supervisorial liability.  *Id.* at 5-7.  The May 12, 2022 Order warned Muñoz that the failure to file a

16   proper amended complaint within the designated time will result in the following:

17              dismissal of defendants Nassar, Gipson, Diaz, Kelso, Pfeiffer,
             Robertson, and Woods from this action without further notice to
18           Plaintiff; the complaint docketed at ECF No. 1 remaining the
             operative complaint; and this action proceeding solely on the Eighth
19           Amendment claims against defendants Yonder, Geary, Gutierrez,
             Swaim, Andruid, Little, Whiteman, Afadho, Diehl, Vaught, Walker-
20           Baker, Van Horn, Sanchez, [Dimmick, Trimm, Lofton,] Runge, and
             Colson found cognizable above.
21

22   *Id.*

23        The twenty-eight-day deadline has passed, and Muñoz has neither filed an amended

24   complaint nor sought an extension of time to do so.  Accordingly, the Court rules as follows:

25   (1) Muñoz's claims again Defendants Nassar, Pfeiffer, Robertson, Woods, Gipson, Diaz, and

26   Kelso are **DISMISSED**; (2) the initial complaint (Dkt. 1) remains the operative complaint; and

27

28   ───────────────
     [7] Eleventh Amendment immunity does not bar Muñoz's claims against the Defendants sued in
     their individual capacities.  *See Graham*, 473 U.S. at 165-66.

United States District Court
Northern District of California

1    (3) this action shall proceed in accordance with the May 12, 2022 Order.

### 3.    Punitive Damages

Additionally, the Court finds it necessary to dismiss Muñoz's claims for punitive damages, as punitive damages may be awarded in a section 1983 suit only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). There is no evidence before the Court that any of the Defendants' alleged wrongdoing rose to this requisite high level of culpability. Accordingly, Muñoz's claims for punitive damages are **DISMISSED**.

### B.    MOTION FOR SUMMARY JUDGMENT

### 1.    Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the court's task to scour the record in search of a genuine issue of triable fact. *Id*. If the nonmoving party fails to make the requisite showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

United States District Court
Northern District of California

A district court may consider only admissible evidence in ruling on a motion for summary judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).  In support of the motion for summary judgment, Defendants have presented declarations from the following: their attorney, Deputy Attorney General James Dahl Mathison; Defendants Diehl, Dimmick, Little, Runge, Swaim, Trimm, Van Horn, Walker-Baker and Whiteman; OOA Associate Director Moseley; and HCCAB Chief Gates.  Dkts. 24-1 – 24-12.

Muñoz did not file an opposition to the motion for summary judgement.  However, because he filed a verified complaint, Dkt. 1, the Court can and will construe it as an affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Defendants seek summary judgment on the following grounds: (1) Muñoz failed to exhaust his administrative remedies as to his Eighth Amendment claim against the KVSP Defendants; (2) there is no genuine dispute of material facts to support Muñoz's Eighth Amendment claims for deliberate indifference to his health and safety against the PBSP Defendants; and (3) they are entitled to qualified immunity.  *See* Dkt. 24.  Ultimately, because the Court concludes that the Defendants are entitled to summary judgment on Muñoz's Eight Amendment claims, it does address whether they are entitled to qualified immunity.

### 2. Exhaustion of Administrative Remedies as to KVSP Defendants (Gutierrez, Swaim, Geary, and Yoder)

#### a. Standard of Review for Exhaustion of Administrative Remedies

"The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino*, 747 F.3d at 1171 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).  Where the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56.  *Id.* at 1168.  The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust.  *Id.* at 1172.  If the defendant meets that

United States District Court
Northern District of California

burden, the burden shifts to the plaintiff to present evidence showing that there is something in this particular case that made the existing and generally available administrative remedies effectively unavailable to the plaintiff. *Id.* The ultimate burden of proof remains with the defendant, however. *Id.*

If undisputed evidence viewed in the light most favorable to the plaintiff shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

### b.    Analysis

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Ngo*, 548 U.S. at 93. A prisoner not only must pursue every available step of the prison appeal process but also must adhere to "deadlines and other critical procedural rules" of that process. *Id.* at 90.

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id.* at 218. In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC[R] Form 602 and 'to describe the problem and action requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting former Cal. Code Regs. tit. 15 § 3084.2(a)).

A prisoner must "exhaust his administrative remedies *prior* to sending his complaint to the district court." *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (emphasis added). The prisoner cannot comply with the PLRA's exhaustion requirement "by exhausting available remedies during the course of the litigation." *Akhtar v. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012)

13

(citation omitted).

The CDCR provides its inmates and parolees the right to administratively grieve and appeal any "policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit. 15, § 3481(a).[8]

Under the regulations effective June 1, 2020, there are two levels of review for non-health-care appeals by inmates, referred to as a grievance and an appeal. At the first level, the inmate submits a form CDCR 602-1 to the Institutional Office of Grievances at the prison or other facility where he is housed. *See Id.* at § 3482(a), (c) (repealed eff. June 1, 2020). "In response, a claimant shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim." *Id.* at § 3481(a) (repealed eff. June 1, 2020). At the second level, an inmate dissatisfied with the Institutional Office of Grievances' decision at first level submits a form CDCR 602-2 to the CDCR's Office of Appeals in Sacramento. *Id.* at §§ 3481(a), 3485(a) (repealed eff. June 1, 2020).

Prisoners also may file complaints regarding healthcare policies, decision, actions, conditions, or omissions using a form CDCR 602 HC. Cal. Code Regs. tit. 15, § 3999.226(a), 3999.227. Such complaints are subject to two levels of review – an institutional level of review and a headquarters level of review. *Id.*

A grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009) (citation and internal quotation omitted). To initiate the grievance process, an inmate must submit a CDCR Form 602 within thirty calendar days of the event or decision being appealed. *See* Cal. Code Regs. tit. 15, § 3482(b)-(d). The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Ngo*, 548 U.S.

---

[8] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.

United States District Court
Northern District of California

1    at 84.

2          There are "three kinds of circumstances in which an administrative remedy, although

3    officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643

4    (2016). First, "an administrative procedure is unavailable when (despite what regulations or

5    guidance materials may promise) it operates as a simple dead end—with officers unable or

6    consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative

7    scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an

8    administrative remedy is not available "when prison administrators thwart inmates from taking

9    advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at

10   644.

11         A prisoner must provide evidence, not just make conclusory allegations, to meet his burden

12   to show that existing and generally available administrative remedies were effectively unavailable.

13   *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016). A prisoner's "unsupported

14   allegations" regarding impediments to exhaustion are insufficient to create a triable issue of fact.

15   *Id.*

16         Here, the evidence submitted by Defendants shows that Muñoz did not submit a grievance

17   concerning his alleged improper transfer from KVSP to PBSP. *See* Gates Decl. ¶ 9; Moseley

18   Decl. ¶ 8. There is no evidence that Muñoz was prevented from taking these steps by officers

19   unable or unwilling to provide any relief, that the administrative scheme was incapable of use, or

20   that he was thwarted by prison administrators from taking advantage of the grievance process. *See*

21   *Ross*, 578 U.S. at 643-44.

22         In sum, the evidence submitted by Defendants meets their burden of proving that there was

23   an available administrative remedy that Muñoz failed to properly exhaust in connection with his

24   Eighth Amendment claim against the KVSP Defendants before filing this action. *See Albino*, 747

25   F.3d at 1172. The burden now shifts to Muñoz to present evidence that there was something in

26   this particular case that made existing and generally available administrative remedies effectively

27   unavailable to him. *See id.* Muñoz has failed to do so as he did not file an opposition to the

28   motion for summary judgment.

United States District Court
Northern District of California

15

Accordingly, the KVSP Defendants (Gutierrez, Swaim, Geary, and Yoder) are entitled to summary judgment under Rule 56, and the Court **GRANTS** their motion for summary judgment as to the Eighth Amendment claim against them. *See Albino*, 747 F.3d at 1166.[9]

### 3. Eighth Amendment Claims Against PBSP Defendants (Dimmick, Whiteman, Van Horn, Diehl, Runge, Little, Walker-Baker, and Trimm)

The Eighth Amendment protects prisoners from inhumane conditions of confinement and requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

In order to show an Eighth Amendment violation stemming from a prison official's failure to protect inmates from dangerous conditions at the prison, a plaintiff must meet two requirements. *See Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). Second, the "prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims, is one of "deliberate indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. *See id.* The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *See Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

### a. Claims Against PBSP Defendants Who Participated in Medication Distribution or Escorted Muñoz to Medication Distribution (Whiteman, Walker-Baker, Van Horn, and Trimm)

Muñoz alleges that Defendants LVNs Whiteman, Walker-Baker, and Van Horn acted with

---

[9] Because the Court has granted the KVSP Defendants' motion for summary judgment based on Muñoz's failure to exhaust available administrative remedies, it need not address their alternative arguments in support of summary judgment. *See* Dkt. 24 at 17-25.

United States District Court
Northern District of California

1   deliberate indifference by exposing him to COVID-19 while distributing his medication, and that

2   Defendant Correctional Officer Trimm acted with deliberate indifference by failing to sanitize the

3   waist chains and wear PPE when escorting Muñoz for medication distribution when he was

4   housed at PBSP from October 28 to November 23, 2020.[10]  *See* Dkt. 1 at 6-8.

5          First, "no one questions that [COVID-19] poses a substantial risk of serious harm" to

6   prisoners.  *Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020).  The

7   transmissibility of the COVID-19 virus in conjunction with the Muñoz's close-quartered living

8   conditions at ASU are sufficient to satisfy the objective prong, i.e., that Muñoz was incarcerated

9   under conditions posing a substantial risk of serious harm.  *See Farmer*, 511 U.S. at 834.  Thus,

10  the pertinent question is whether the PBSP Defendants' actions demonstrated deliberate

11  indifference to Muñoz's risk of harm.  *Id.*  The key inquiry is not whether the PBSP Defendants

12  perfectly responded or complied with every CDC guideline, but rather whether they "responded

13  reasonably to th[is] risk, even if the harm ultimately was not averted."  *Id.* at 844.

14         The PBSP Defendants argue that "the entire circumstances of the medication distribution

15  process shows that [they] were not deliberately indifferent."  Dkt. 24 at 19-20.  They claim that

16  they "responded reasonably to the risk of exposing [Muñoz] to COVID-19," stating as follows:

> Within the C Facility where Plaintiff was housed at the relevant time
> period of October 28 to November 23, 2020, there were six housing
> units.  There were approximately 24 inmates in each unit, with each
> unit containing six pods, and the inmates were housed in cells within
> the pods.  For the medication distributions, the units were accessed by
> way of a "roundabout" that went from the entry/exit gate inside the
> building, through each unit, and circling back to the starting location
> at the building entry/exit gate.  (Declarations of Diehl, Whiteman,
> Walker-Baker, Van Horn, and Trimm at ¶ 2.)  When and as required
> by PBSP protocols and procedures, PPE for staff involved in the
> medication distributions was kept in the first unit, donned for the
> medication distribution trip through each unit via the roundabout, and
> removed at the same location when the route had been completed,
> before staff exited the building.  (*Id.*)  The PPE required had been pre-
> placed for staff to use, including some or all of a mask or face shield,
> gloves, and smock/gown.  Signs were posted at the location,
> indicating what equipment was to be used by staff.  (*Id.*)  At all times,

---

[10] Muñoz also claims that unserved Defendants LVNs Afadho and Vaught as well as unserved
Defendants Correctional Officers Sanchez, Runge, and Colson acted with deliberate indifference
by exposing him to COVID-19 while distributing his medication or escorting him to medication
distribution during the relevant time frame.  *See* Dkt. 1 at 6-8.

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendants Diehl, Whiteman, Walker-Baker, Van Horn and Trimm used all the equipment that was so provided, in accordance with the signage.  (*Id.*)

To receive their medication, inmates would exit their cells and come to the door of the pod. The pods had a door that was "honeycomb" type perforated metal, which allowed for visual access, and a tray slot. (Declarations of Diehl, Whiteman, Walker-Baker, Van Horn, and Trimm at ¶ 3.)  The directed procedure for the medication distribution was that the inmate would stand on one side of the pod door, and staff distributing the medication would stand on the other side of the door. The medication would then be passed to the inmate through the tray slot in the door.  (*Id.*)  Certain medications required staff to visually observe and confirm that an inmate had consumed it after the inmate had placed it in his mouth.  To do so, the PBSP protocol and procedure was for the staff member to stand approximately one and a half arm-lengths away from the inmate, and observe the inmate's mouth as open and empty through the perforated door. (*Id.*)  Defendants Diehl, Whiteman, Walker-Baker, Van Horn, and Trimm complied with these procedures at all times.  (*Id.*)

*Id.* at 20.  These PBSP Defendants argue that their "compliance with the institution's procedures and protocols for wearing PPE, and for the distribution and observation of inmates taking medication, negates the showing required to satisfy the subjective prong for their deliberate indifference."  *Id.* at 21.  They further claim that their compliance with such procedures "affirmatively shows that [they] had no subjective intent to harm [Muñoz] by exposing him to COVID-19."  *See id.* at 21 (citing *Farmer*, 511 U.S. at 837).  Because the subjective prong for deliberate indifference cannot be established, the PBSP Defendants argue that the Court should grant summary judgment.  *Id.*  Viewing the record in the light most favorable to Muñoz, there is no triable issue of material fact as to whether the PBSP Defendants' actions amounted to deliberate indifference, as explained below.

There have been two class actions, *Plata* and *Coleman*, litigated for many years based on the CDCR's failure to implement procedures to provide constitutionally adequate medical and mental health care to inmates.  *See Brown v. Plata*, 563 U.S. 493, 506-10 (2011) (discussing background of *Plata* and *Coleman* cases); *Plata v. Newsom*, 445 F. Supp. 3d 557, 560 (N.D. Cal. April 17, 2020) (same).  In 2007, the district courts determined that a substantial reduction of state prison populations was needed to enable adequate care, and a three-judge panel subsequently ordered the CDCR to accomplish such a reduction, an order which the Supreme Court upheld.  *See Brown v. Plata*, 563 U.S. at 509-10.

1    Since the pandemic began in 2020, this Court has considered whether to order Defendants

2    to take particular measures in response to the COVID-19 pandemic.  In 2020, the *Plata* inmates

3    sought a further reduction of prison populations, among other relief, due to the health threat newly

4    posed by the COVID-19 pandemic.  *Plata*, 445 F. Supp. 3d at 559, 561.  On April 17, 2020, the

5    *Plata* court ruled that the CDCR's handling of the COVID-19 pandemic was reasonable and did

6    not violate the state prison inmates' constitutional rights.  *Id.* at 561-69.  In reaching that

7    conclusion, the *Plata* court noted that the CDCR had implemented "several measures to promote

8    increased physical distancing" and limit the spread of COVID-19 in the prisons.  *Id.* at 564.  These

9    measures included "reducing the population, transferring inmates out of dormitory housing to less

10   crowded spaces, restricting movement, eliminating mixing of inmates from different housing

11   units, and placing six-foot markers in communal areas."  *Id.*  More recently, the Ninth Circuit

12   rejected the *Plata* plaintiffs' contention that the CDCR was deliberately indifferent to inmates'

13   safety by not mandating COVID-19 vaccinations for prison staff and for inmates who have in-

14   person visits or work outside the institution.  *See Plata v. Newsom*, 2022 WL 1210694 (9th Cir.

15   Apr. 25, 2022).  The Ninth Circuit stated as follows:

16           We conclude that CDCR's COVID-19 vaccination policy was not
             deliberately indifferent because the agency took significant action to
17           address the health risks posed by COVID-19, including making
             vaccines and booster doses available to prisoners and correctional
18           staff, enacting policies to encourage and facilitate staff and prisoner
             vaccination, requiring staff to wear personal protective equipment,
19           and ensuring unvaccinated staff members regularly test for COVID-
             19.   Defendants also employed other widely accepted mitigation
20           measures to reduce the risk of prisoners contracting COVID-19,
             including symptom screening for all individuals entering the prisons;
21           enhanced cleaning in the facilities; adopting an outbreak action plan;
             upgrading ventilation; establishing quarantine protocols for medically
22           vulnerable patients; and testing, masking, and physical distancing
             among inmates.  In light of these uncontested facts, Defendants did
23           not ignore or fail to respond to the risk of COVID-19 generally, nor
             did they disregard the importance of vaccination as a key mitigation
24           measure specifically.

25   *Id.* at *1.

26           Here, it seems that Muñoz argues, in a conclusory and speculative way, that PBSP

27   Defendants acted with deliberate indifference by failing to follow certain COVID protocols while

28   distributing medication or while escorting him for medication distribution, which led to him to test

United States District Court
Northern District of California

1    positive for COVID-19 on November 23, 2020.  *See* Dkt. 1 at 7-8.

2         As mentioned above, when examining whether a prison official subjectively acted with

3    deliberate indifference to the risk of COVID-19 exposure, the key inquiry is not whether the

4    official perfectly responded, complied with every CDC guideline, or whether the official's efforts

5    ultimately averted such a risk.  *See Farmer*, 511 U.S. at 844.  Instead, it is whether the official

6    "responded reasonably to th[is] risk."  *Id.*  The record shows that the PBSP Defendants involved in

7    medication distribution (Whiteman, Walker-Baker, Van Horn) claim that they complied with the

8    prison's procedures and protocols for wearing PPE and for the medication distribution and

9    observation of medication-taking by inmates.  *See* Whiteman, Walker-Baker, and Van Horn Decls.

10   ¶ 2.  Defendant Trimm also claims that he complied with the prison's requirements for wearing

11   PPE at all times, including when escorting inmates.  *See* Trimm Decls. ¶ 2.  This evidence shows

12   that the PBSP Defendants responded reasonably to the risk of COVID-19 exposure, and prevents

13   the Court from concluding that Muñoz can satisfy the subjective prong of a deliberate indifference

14   claim.  *See Farmer*, 511 U.S. at 844.  To the extent that Muñoz presents evidence that the PBSP

15   Defendants deviated from and failed to follow certain COVID protocols during medication

16   distributions or escorts, this alone is insufficient to demonstrate that these Defendants acted with

17   deliberate indifference toward his health and safety.  *Cf. Fraihat v. U.S. Immigration & Customs*

18   *Enforcement*, 16 F.4th 613, 639 (9th Cir. 2021) (holding the failure of ICE COVID policies for

19   immigration detention centers to fully align with CDC recommendations and to strongly

20   recommend "social distancing" did not support a finding of deliberate indifference); *see, e.g.*,

21   *Peyton v. Cates*, No. 1:22-cv-00151-JLT-EPG (PC), 2022 WL 1430752, at *5 (E.D. Cal. May 5,

22   2022) (finding that "prison policy . . . alone [is not] determinative of constitutional requirements")

23   (citation omitted), *adopted, Peyton v. Cates*, 2022 WL 2307789 (E.D. Cal. June 27, 2022); *Greer*

24   *v. Caravajal*,[11] No. 5:22-cv-00334 VBF JDE, 2022 WL 4826513, at *9 (C.D. Cal. June 30, 2022)

25   ("When examining whether a prison official subjectively acted with deliberate indifference to the

26   risk of COVID-19, the key inquiry is not whether the official perfectly responded, complied with

27

28   ───────────────────
     [11] In the caption of *Greer*, the district court misspelled the last name of the defendant, Federal
     Bureau of Prisons Director Michael D. Carvajal.  *See* 2022 WL 4826513, at *1.

United States District Court
Northern District of California

every CDC guideline, or whether his efforts ultimately averted the risk."), *report and recommendation adopted sub nom. Greer v. Carvajal*, 2022 WL 4842927 (C.D. Cal. Sept. 30, 2022) (citation omitted); *Jones v. Sherman*, No. 1:21-cv-01093 DAD EPG, 2022 WL 783452, at *8 (E.D. Cal. Mar. 11, 2022) (finding that "the failure to follow certain COVID-19 guidelines, without more, is insufficient to satisfy the subjective prong of the deliberate indifference standard") (footnote omitted).

Even considering non-COVID-19 cases, federal courts have uniformly held that a bare assertion that a prison or jail official failed to follow standard procedure is insufficient, as a matter of law, to demonstrate deliberate indifference. One such case is *Davis v. Buchanan County*, a wrongful death case filed by the parents of a former jail inmate. 11 F.4th 604 (8th Cir. 2021). The Eighth Circuit considered, among various issues, whether a transportation officer was deliberately indifferent to the decedent's serious medical needs because he knew that the decedent was in need of special medical attention when he took the decedent to the jail, yet consciously chose not to report that information to the jail booking officer. *Id.* at 627. The court viewed the evidence most favorably to the parents, and determined that the defendant had the potential to hear the doctor's testimony at the sentencing hearing about the decedent's "dire, life-threatening condition" prior to transporting him to jail. *Id.* The parents argued that under the jail's policies, the defendant was supposed to listen to courtroom testimony and report known medical conditions to the jail booking officer when answering the medical intake. *Id.* at 628-29. The Eighth Circuit reversed the district court's denial of summary judgment as to the deliberate indifference claim against the defendant upon concluding that: his failure to follow written procedures does not constitute per se deliberate indifference; he did not violate the decedent's constitutional right to receive medical care; and under state law he was entitled to official immunity, which "protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Id.* at 629.

In another case, *Luckert v. Dodge County*, the estate of a detainee who committed suicide while in the county jail filed a section 1983 action against the county and jail officials for

deliberate indifference to serious medical needs.  684 F.3d 808 (8th Cir. 2012).  The Eighth Circuit reversed the trial court's denial of the defendants' motion for judgment as a matter of law after a jury found them liable for deliberate indifference.  *Id.* at 820.  The court considered the defendants' admission that they did not follow aspects of the County Department of Corrections' written suicide intervention policy, and concluded as follows: "Failure to follow written procedures does not constitute per se deliberate indifference.  If this were so, such a rule would create an incentive for jails to keep their policies vague, or not formalize policies at all."  *Id.* at 819.  The court held that, although the defendants did not follow the written policy and neglected to take other actions that "may constitute poor judgment, negligence or possibly gross negligence, [such acts and omissions] do not constitute deliberate indifference when viewed in the context of the affirmative steps" they took to prevent the decedent's suicide.  *Id.* at 818.

Similarly, in *Taylor v. Adams*, another action brought by the estate of a pretrial detainee, the Eleventh Circuit considered a suit under section 1983 for deliberate indifference to serious medical needs after the decedent died while being transported to the jail.  221 F.3d 1254 (11th Cir. 2000).  In *Taylor*, the plaintiff alleged that the medically trained firemen or "firemedics," who examined the decedent at the time of his arrest, failed to render any treatment, even though they were informed by a bystander that the decedent had a history of seizures and that the decedent, in fact, was about to have a seizure.  *Id.* at 1258.  In addition, the plaintiff argued that the firemedics failed to follow their own protocols, which required taking the vital signs of seizing patients and calling in paramedics.  *Id.* at 1258-59.  On appeal, the Eleventh Circuit reversed the district court's denial of summary judgment for the firemedics.  *Id.* at 1258.  In reaching its decision, the court noted that there was no evidence "from which a jury could find that the firemedics actually drew the inference that [the decedent] was having a seizure," notwithstanding the information provided by the bystander.  *Id.*  In addition, the court ruled that the "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."  *Id.*

Under *Farmer*, a claim of deliberate indifference requires that the prison official (1) be actually aware of facts from which an inference could be drawn that a substantial risk of harm

exists, (2) actually draw the inference, but (3) nevertheless disregard the risk to the inmate's health.  511 U.S. at 837-38.  Here, it is arguable that the PBSP Defendants were aware of facts *from which an inference could be drawn* that their failure to follow the COVID protocols during medication distributions or escorts created a substantial risk of serious harm to Muñoz.  *See id.*  Even if Muñoz could show that these Defendants knew of facts from which such an inference could be drawn, nothing in the record demonstrates that they *actually drew the inference* that any deviation resulting in the failure to follow the COVID protocols during medication distributions or escorts exposed Muñoz to a substantial risk of contracting COVID-19.  *See id.* at 837.  As in *Davis*, *Luckert*, and *Taylor*, such alleged deviation by the PBSP Defendants from any of the medication distribution/escort COVID protocols may have been negligent—or even grossly negligent—but it is insufficient, as a matter of law, to show deliberate indifference.  *See id.* at 835.

Accordingly, the Court **GRANTS** summary judgment as to the deliberated indifference claim against the PBSP Defendants who failed to follow certain COVID protocols while distributing medication (Defendants Whiteman, Walker-Baker, and Van Horn) or who failed to sanitize the waist chains and wear PPE when escorting Muñoz (Defendant Trimm).

> **b.     Claims Against PBSP Defendants Who Had No Involvement in Medication Distributions and/or Had No Encounters With Muñoz (Little, Runge, Dimmick, and Diehl)**

Muñoz claims that the remaining served Defendants (Little, Runge, Dimmick, and Diehl) also acted with deliberate indifference by failing to follow certain COVID protocols while distributing medication and exposing him to COVID-19.  Dkt. 1 at 14.  Muñoz further claims that Defendant Little as well as another correctional officer, Defendant Andruid (who has not been served), further exposed him to COVID-19 by refusing to permit the unit to be sanitized in accordance with *Plata* guidelines.  *Id.*  Other than Muñoz's aforementioned statements from his complaint, he does not provide any further support for this claim.  *See id.*  Meanwhile, Defendants have provided evidence showing that Defendants Little, Runge, Dimmick, and Diehl could not have exposed Muñoz to COVID-19 because they neither participated in medication distribution nor had any encounters with him during the relevant time frame, as explained below.

Defendant Little, who worked as a correctional officer, claims not to have been involved in

United States District Court
Northern District of California

1   medication distributions to Muñoz from October to November 2020, but alleges that he complied

2   with the institution's requirements for wearing PPE "[a]t all times that [he] was working" at

3   PBSP.  Little Decl. ¶ 3.  Meanwhile, Muñoz claims that during the relevant time period, Defendant

4   Little, would "routin[e]ly walk through without wearing their medical [PPE]," such as "face

5   masks, gowns, and gloves."  *See* Dkt. 1 at 7.  However, even if Defendant Little had not followed

6   the institution's procedures and protocols, such actions would at most amount to negligence,

7   which is insufficient to demonstrate that Defendant Little was deliberately indifferent to Muñoz's

8   health or safety.  *See Farmer*, 511 U.S. at 835; *see, e.g.*, *Peyton*, 2022 WL 1430752, at *5; *Greer*,

9   2022 WL 4826513, at *9; *Jones*, 2022 WL 783452, at *8.  Because the subjective prong for

10  deliberate indifference cannot be established against Defendant Little, the Court **GRANTS**

11  summary judgment as to Muñoz's claims against Defendant Little.

12      Defendants Correctional Officers Runge and Dimmick as well as Defendant LVN Diehl

13  claim they could not have exposed Muñoz to COVID-19 because they do not recall having any

14  encounters with him, including any instances of medication distribution.  *See* Runge Decl. ¶ 2;

15  Dimmick Decl. ¶ 4, Diehl Decl. ¶ 4.

16      With regard to Defendant Runge, the record shows that he did not work in C Facility,

17  where Muñoz was housed before contracting COVID-19.  Runge Decl. ¶ 2.  Defendant Runge

18  worked as an inmate transportation officer during that time, he did not enter C Facility during that

19  time, and he confirmed that the records shows that he did not transport Plaintiff during that time.

20  *Id.*  And similarly, Muñoz does not recall having any encounters with Defendant Runge before

21  being quarantined.  Muñoz Dep. at 63.

22      As for Defendants Diehl and Dimmick, the record shows that Muñoz does not recall

23  having any encounters with these defendants during the relevant time frame.  *Id.* at 61.  Muñoz's

24  only alleged encounters with Defendant Dimmick only happened after Muñoz had already been

25  quarantined with COVID-19.  Dkt. 1 at 8-9.  And, neither Defendant Diehl nor Defendant

26  Dimmick recall having any encounters with Muñoz during the relevant time frame.  Diehl Decl.

27  ¶ 5; Dimmick Decl. ¶ 4.

28      Where there is no evidence that Muñoz ever encountered Defendants Runge, Dimmick,

United States District Court
Northern District of California

24

and Diehl, then these defendants could not have exposed Muñoz to COVID-19.  Therefore, Muñoz has failed to provide evidence regarding an essential element of his Eighth Amendment claim against Defendants Runge, Dimmick, and Diehl.  The Court **GRANTS** summary judgment as to Muñoz's claims against them.

### c.      Summary

Based on the evidence presented, the PBSP Defendants have shown that there is no genuine issue of material fact with respect to Muñoz's deliberate indifference claims against them. *See Celotex Corp.*, 477 U.S. at 323.  Muñoz has failed to respond and point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279.  Accordingly, the PBSP Defendants are entitled to judgment as a matter of law as to Muñoz's deliberate indifference claims against them.  *Id.*; *Celotex Corp.*, 477 U.S. at 323.  Therefore, the Court **GRANTS** their motion for summary judgment as to the Eighth Amendment claims against them.[12]  Dkt. 24.

### 4.      Remaining Claims Against Unserved PBSP Defendants

As mentioned above, Defendants Andruid, Afadho, Vaught, Sanchez, Lofton, and Colson have not been served in this action and have not joined the other served PBSP Defendants in their motion for summary judgment.

Summary judgment may be properly entered in favor of any unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) the plaintiff has been provided an opportunity to address the controlling issues.  *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir. 1995).

Here, the allegations pertaining to the Eighth Amendment claims against unserved Defendants Andruid, Afadho, Vaught, Sanchez, Lofton, and Colson are the same as those against the served Defendants.  There is no suggestion in the briefs and exhibits filed in connection with the present motion for summary judgment that the analysis differs with respect to these

---

[12] Because the Court has granted the PBSP Defendants' motion for summary judgment on the merits, it need not address their alternative ground that they are entitled to qualified immunity.

aforementioned unserved Defendant as opposed to the served Defendants.  *See Columbia Steel Fabricators, Inc.*, 44 F.3d at 803 (affirming the grant of summary judgment in favor of non-appearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against non-appearing defendant).

Accordingly, unserved Defendants Andruid, Afadho, Vaught, Sanchez, Lofton, and Colson are entitled to summary judgment as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.  The Court **DISMISSES**: (a) all official capacity claims against all the named defendants; (b) Muñoz's claims again Defendants Nassar, Pfeiffer, Robertson, Woods, Gipson, Diaz, and Kelso; and (c) his claims for punitive damages.

2.  The Court **GRANTS** Defendants' request for judicial notice as to Exhibits 1-3. Dkt. 25.

3.  The Court **GRANTS** Defendants' motion for summary judgment (Dkt. 24) as to all claims against served Defendants Gutierrez, Swaim, Geary, Yoder, Walker-Baker, Van Horn, Whiteman, Diehl, Runge, Trimm, Dimmick, and Little.  The Court also **GRANTS** summary judgment as to the claims against unserved Defendants Andruid, Afadho, Vaught, Sanchez, Lofton, and Colson.  Pursuant to the law of the circuit, Muñoz's Eighth Amendment claim against Defendants Gutierrez, Swaim, Geary, and Yoder is **DISMISSED** without prejudice for failure to properly exhaust available administrative remedies before filing suit.

4.  The Clerk of the Court shall terminate all pending motions and close the file.

5.  This Order terminates Docket Nos. 24 and 25.

**IT IS SO ORDERED.**

Dated:  March 19, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California